# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania Independent Oil & Gas Association, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 321 M.D. 2015 |
| | : | |
| Commonwealth of Pennsylvania, | : | Argued: November 18, 2015 |
| Department of Environmental | : | |
| Protection, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
                    HONORABLE BERNARD L. McGINLEY, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                    HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  December 29, 2015**

Before this Court in our original jurisdiction are the preliminary objections (POs) of the Commonwealth of Pennsylvania, Department of Environmental Protection (DEP) to the "Petition for Review in the Nature of a Complaint for Declaratory Relief" (Petition for Review) filed by the Pennsylvania Independent

Oil & Gas Association (PIOGA). Pursuant to the Declaratory Judgments Act,[1] PIOGA seeks a declaration from this Court "that DEP is prohibited from applying and enforcing" the requirements of Section 3215(c) of the Act commonly known as the Pennsylvania Oil and Gas Act (Act 13), 58 Pa. C.S. § 3215(c),[2] on well permit applicants because the Pennsylvania Supreme Court enjoined the application and enforcement of that provision, among others, in Robinson Township v. Commonwealth, 83 A.3d 901 (Pa. 2013) (plurality).[3] (Petition for Review ¶¶ 7-9.)

---

[1] 42 Pa. C.S. §§ 7531-7541. Section 7541(a) of the Declaratory Judgments Act states that "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa. C.S. § 7541(a).

[2] This provision provides as follows:

(c) Impact.--On making a determination on a well permit, the department shall consider the impact of the proposed well on public resources, including, but not limited to:

(1) Publicly owned parks, forests, game lands and wildlife areas.
(2) National or State scenic rivers.
(3) National natural landmarks.
(4) Habitats of rare and endangered flora and fauna and other critical communities.
(5) Historical and archaeological sites listed on the Federal or State list of historic places.
(6) Sources used for public drinking supplies in accordance with subsection (b).

58 Pa. C.S. § 3215(c).

[3] In Robinson Township, our Supreme Court examined the "entire decisional process" for permitting oil and gas wells under Section 3215(b) through (e) of Act 13 and, ultimately, a majority of the justices found that Section 3215(b)(4) and (d) were unconstitutional. Robinson Township, 83 A.3d at 982-85, 1000-01. The Supreme Court then reviewed the remaining

*(Continued…)*

2

## I. The Petition for Review

On June 19, 2015 PIOGA filed the Petition for Review averring, in relevant part, the following. PIOGA, a trade association, has members who "own and lease property interests that enable them to conduct oil and gas exploration, drilling, production, and related operations in Pennsylvania."[4] (Petition for Review ¶¶ 1-2.) DEP is the agency responsible for applying, implementing, and enforcing Act 13. As part of its administrative duties, "DEP reviews well permit applications submitted by – and issues well permits to – PIOGA members." (Petition for Review ¶ 4.) DEP requires applicants for well permits to comply with the requirements set forth in a form entitled Coordination of a Well Location with Public Resources (Public Resources Form) and the Pennsylvania Natural Diversity Inventory (PNDI) Policy.[5]

"DEP has expressly acknowledged that Section 3215(c) of Act 13 serves as its basis for imposing the requirements set forth in the Public Resources Form and

_____

provisions of Section 3215(b) to determine whether they could be severed from Section 3215(b)(4) and, per a majority of the justices, determined that they could not and enjoined the application of Section 3215(b) in its entirety. Id. at 999, 1008-09. Finally, the Supreme Court considered Section 3215(c) and (e), which are part of the same decisional process, and a majority of the justices determined that those two provisions also were unconstitutional and their application was enjoined. Id. at 999, 1009.

[4] "An association may have standing as a representative of its members . . . as long as [the association] 'has at least one member who has or will suffer a direct, immediate, and substantial injury to an interest as a result of the challenged action[, i.e., is aggrieved, the association] has standing.'" Energy Conservation Council of Pennsylvania v. Public Utility Commission, 995 A.2d 465, 476 (Pa. Cmwlth. 2010) (quoting Parents United for Better Schools v. School District of Philadelphia, 646 A.2d 689, 692 (Pa. Cmwlth. 1994)).

[5] The Public Resources Form and the PNDI Policy are Exhibits E and F, respectively, to the Petition for Review.

requirements in the PNDI Policy." (Petition for Review ¶ 24.) In particular, the Instructions for Completing an Application for a Permit to Drill or Alter an Oil or Gas Well (Instructions)[6] specifically state that "'Section 3215(c) of [Act 13] requires [DEP] to consider the impact of proposed well[s] on various public resources when making a determination on a well permit. 58 Pa. C.S. § 3215(c).'" (Petition for Review ¶ 25 (quoting Instructions at 8).) The Instructions also indicate that, in order to obtain a well permit, "applicants must submit the Public Resources Form (if applicable) and document compliance with the PNDI Policy." (Petition for Review ¶ 25.) When an applicant does not provide the Public Resources Form, if required, or comply with the PNDI Policy, DEP may deny the permit application as incomplete pursuant to Section 3211(e) of Act 13, 58 Pa. C.S. § 3211(e).

The Permit Application to Drill and Operate an Unconventional Well (Application)[7] asks the applicant whether the proposed well would "'be located where it may impact a public resource as outlined in the [Public Resources Form].'" (Petition for Review ¶ 26 (quoting Application at 2).) If the answer is yes, the applicant is required to "'attach a comp[l]eted copy of the form and clearance letters from applicable agencies'" to its application.[8] (Petition for Review ¶ 26 (quoting Application at 2).)

---

[6] The Instructions are Exhibit B to the Petition for Review.

[7] The Application is Exhibit D to the Petition for Review.

[8] The Petition for Review avers that:

*(Continued…)*

4

The PNDI is a database "managed by the Pennsylvania Department of Conservation and Natural Resources ('DCNR')" that "build[s], maintain[s], and provide[s] accurate and accessible ecological information according to DCNR's enabling statute." (Petition for Review ¶ 31.) Pursuant to DEP's PNDI Policy,

> certain permit applicants [must]: (1) identify habitats of 'special concern species;' (2) describe any means to avoid or mitigate impacts; (3) provide documentation that they completed the online PNDI environmental review; and (4) notify jurisdictional agencies, such as the [Pennsylvania] Game Commission, regarding such impacts identified on the PNDI site.

(Petition for Review ¶ 32.) The PNDI Policy indicates that protection of "'Special Concern Species' . . . is a legal requirement only under certain permitting programs," including permits issued under Section 3215 of Act 13. (Petition for Review ¶ 33.) DEP includes the PNDI Policy's definitions and requirements in its well permitting process and "expressly require[s] well permit applicants to confirm that they have satisfied the requirements of the PNDI Policy." (Petition for Review ¶ 34.) By "incorporating [the] PNDI[] requirements into the well permitting process" DEP is "applying and enforcing Section 3215(c) of Act 13, in particular, those requirements . . . identified in Section 3215(c)(4) as 'habitats of

---

to complete the Public Resources Form the applicant must[:] (1) determine whether the well will be within or near any of the public resources listed in Section 3215(c) that are land or water features and sites; (2) list the names of agencies responsible for such resources; (3) communicate with those agencies and indicate whether agency approval is necessary or has been obtained[;] (4) report any potential conflict with a "species of special concern" and whether it has been resolved[;] and (5) describe in detail the measures that the applicant will employ to protect those public resources.

(Petition for Review ¶ 27.)

5

rare and endangered flora and fauna and other critical communities.'" (Petition for Review ¶ 36 (quoting 58 Pa. C.S. § 3215(c)(4)).)

Based on these averments, PIOGA asserts that DEP is using the Public Resources Form and PNDI Policy as vehicles to apply and enforce Section 3215(c). PIOGA alleges that DEP no longer has statutory authority to require PIOGA's members to comply with Section 3215(c), through the Public Resources Form and PNDI Policy, because the application and enforcement of that provision was enjoined by the Supreme Court in Robinson Township. "DEP's imposition of these requirements creates untenable uncertainty and insecurity with respect to [the] rights, status, and legal relations of PIOGA's members in the day-to-day operation of their businesses, including (but not limited to) their relationships with surface landowners and other public agencies." (Petition for Review ¶ 9.) PIOGA requests a declaration "that DEP has no authority to mandate that well permit applicants satisfy the requirements set forth in the Public Resources Form" or "the requirements set forth in the PNDI Policy related to [the] enjoined Section 3215(c)," and any other just and proper relief, including costs and reasonable attorneys' fees. (Petition for Review, Wherefore Clause.)

## II.    The POs

DEP filed POs on July 31, 2015 alleging that PIOGA has not raised a justiciable issue in the Petition for Review and has an adequate remedy at law, an

administrative appeal, which PIOGA has not exhausted or established that an exception to the exhaustion doctrine applies.[9]

## III. Discussion

In reviewing the POs, we apply the following standards. "In ruling on preliminary objections, the courts must accept as true all well-pled facts that are material and all inferences reasonably deducible from the facts." Guarrasi v. Scott, 25 A.3d 394, 400 n.5 (Pa. Cmwlth. 2011). However, we "are not required to accept as true any unwarranted factual inferences, conclusions of law or expressions of opinion." Id. To sustain preliminary objections, "it must appear with certainty that the law will permit no recovery" and "[a]ny doubt must be resolved in favor of the non-moving party." Id.

### a. Justiciability

DEP argues, in support of dismissal, that PIOGA has not alleged any justiciable issues because PIOGA does not have standing and the Petition for Review does not assert a case or controversy that is ripe for judicial review.

---

[9] Following the Supreme Court's decision in Robinson Township, PIOGA, which was not a party in Robinson Township, filed an application with the Supreme Court to intervene in that matter in order to request that the Supreme Court enforce its judgment enjoining DEP from enforcing the unconstitutional provisions of Act 13. (DEP's Motion for Stay of the Proceedings (Motion for Stay) ¶ 3.) DEP requested that the Petition for Review filed in this Court be stayed pending the Supreme Court's action on PIOGA's application. (Motion for Stay ¶¶ 6-9.) This Court denied DEP's Motion for Stay by Order dated July 16, 2015. The Supreme Court denied PIOGA's application to intervene on August 20, 2015.

7

1. Standing

DEP argues that PIOGA has only made general allegations that the permitting program "creates untenable uncertainty and insecurity" and is a burden for its members. (Petition for Review ¶ 9.) These allegations, according to DEP, do not aver a direct and immediate harm necessary for standing, particularly where PIOGA has not alleged any concrete harm to its members, such as the denial of a permit, in the eighteen months since Robinson Township. Rather, DEP asserts, "PIOGA conjures up . . . [a] range of speculative 'what ifs' and abstract uncertainties to demonstrate the existence of harm where none exists." (DEP's Br. at 10.)

PIOGA argues that it has standing because, pursuant to Arsenal Coal Company v. Department of Environmental Resources, 477 A.2d 1333 (Pa. 1984), and its progeny, a party need not refuse to comply, and have its permit denied, before it can challenge an invalid regulation or, in this instance, a permitting process that relies on an unconstitutional provision of Act 13. The purpose of declaratory judgment, PIOGA asserts, is to eliminate the untenable choice presented here, in which its members must either comply with unlawful requirements or suffer the denial of their permits. PIOGA emphasizes that it has pled that its members: conduct oil and gas operations throughout the Commonwealth; are required to obtain permits from DEP in order to drill their wells; and must comply with the Public Resources Form and PNDI Policy in order to get those permits. PIOGA notes, in its brief, that the permitting process for its members is timely and costly, and that the failure of an agency to comply with the

8

law constitutes irreparable harm in itself. Wyland v. West Shore School District, 52 A.3d 572, 583 (Pa. Cmwlth. 2012).

Our Supreme Court recently addressed standing in declaratory judgment actions in Office of Governor v. Donahue, 98 A.3d 1223 (Pa. 2014), explaining:

> In Pennsylvania, the doctrine of standing . . . is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. In re Hickson, . . . 821 A.2d 1238, 1243 ([Pa.] 2003). For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been "aggrieved." Pittsburgh Palisades Park, LLC v. Commonwealth, . . . 888 A.2d 655, 659 ([Pa.] 2005). As this Court explained in William Penn Parking Garage[, Inc. v. City of Pittsburgh, 346 A.2d 269 (Pa. 1975)], "the core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge." [Id.] at 280–81. A party is aggrieved for purposes of establishing standing when the party has a "substantial, direct and immediate interest" in the outcome of litigation. Johnson [v. American Standard, 8 A.3d [318,] 329 [(Pa. 2010)] (quoting Fumo v. City of Philadelphia, . . . 972 A.2d 487, 496 ([Pa.] 2009)). A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative. Id.

> Thus, while the purpose of the Declaratory Judgment[s] Act, 42 Pa. C.S. §[§] 7531[-7541], is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered," the availability of declaratory relief is limited by certain justiciability concerns. 42 Pa. C.S. § 7541(a). In order to sustain an action under the Declaratory Judgment[s] Act, a plaintiff must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy, as the courts of this

9

Commonwealth are generally proscribed from rendering decisions in the abstract or issuing purely advisory opinions.

Id. at 1229 (fourth alteration in original).

Applying these principles to the facts in Donahue, the Supreme Court held that the Office of Governor (OG) had standing to institute a declaratory judgment action against the Office of Open Records (OOR) challenging the OOR's interpretation of a statutory provision of the Right-to-Know Law[10] (RTKL) as being erroneous, despite the OG not being adversely affected by an OOR decision. Donahue, 98 A.3d at 1225, 1230-31. The OOR had announced, in dicta, how it would interpret and enforce a particular provision of the RTKL in the future, with which the OG disagreed. Id. at 1226. The OG filed a declaratory judgment action in this Court's original jurisdiction, seeking a declaration that the OOR's interpretation was erroneous, which, after overruling OOR's preliminary objections challenging, *inter alia*, the OG's standing, this Court granted. Id. at 1226-27.

On appeal the Supreme Court explained, with regard to the OG's standing, that the OOR's interpretation of the RTKL would impact how the OG would handle RTKL appeals, that the "OG's allegation of harm is neither remote nor speculative," and that the "OG possesses a cognizable interest in the outcome of this dispute that surpasses the interest of all citizens." Id. at 1230. The Supreme Court then concluded that, because the OG handles RTKL requests and must comply with the RTKL, the OOR's interpretation of the RTKL "adversely, directly

_____

[10] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 – 67.3104.

10

and immediately impacts [the] OG" and, therefore, the OG had standing. Id. Citing, among other precedent, Arsenal Coal, the Supreme Court summarized as follows

> [f]or these reasons we conclude that [the] OG possesses standing to challenge in a declaratory judgment action OOR's interpretation of [the RTKL]. Our position in this respect is consistent with similar decisions where we have recognized the justiciability of declaratory judgment actions seeking pre-enforcement review of an administrative agency's interpretation and enforcement of a governing statute.

Id. at 1230.

Arsenal Coal, which the Supreme Court cited in Donahue and PIOGA relies upon here, involved an equitable action filed in this Court's original jurisdiction by fifty-five anthracite coal mine operators and producers (companies) challenging the implementing regulations governing environmental performance standard for anthracite coal mining. Arsenal Coal, 477 A.2d at 1334-35. The companies sought pre-enforcement judicial review of those regulations from this Court, asserting that the Environmental Quality Board, which had promulgated the regulations, had exceeded its statutory authority in doing so. Id. at 1335. In resolving the issue of whether this Court could exercise jurisdiction over the companies' complaint, the Supreme Court reasoned:

> Where the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement.
>
> We believe that the asserted impact of the regulations in the instant case is sufficiently direct and immediate to render the issue appropriate for judicial review; the lengthy process by which the validity of the regulations will be addressed on a basis of application

11

to the litigant would result in ongoing uncertainty in the day[-]to[-]day business operations of an industry which the General Assembly clearly intended to protect from unnecessary upheaval.

Appellants may refuse to comply and test the regulations by appealing, for example, a denial of permit to operate, or a denial of bond release, or by defending actions imposing sanctions for non-compliance. 52 P.S. § 1396.4(b).[11] This proposed avenue of review is beset with penalties and impediments to the operation of the anthracite industry rendering it inadequate as a satisfactory alternative to the equitable action initiated under the original jurisdiction of Commonwealth Court.

The alternative to challenging the regulation through noncompliance is to submit to the regulations. We cannot say that the burden of such a course is other than substantial, accepting, as we must on a motion to dismiss on the pleadings, the allegations of the complaint as true. Appellants have alleged that the regulations require the expenditure of substantial sums to comply which, while not immediately calculable, will substantially impair the cash flow of all Appellants. Whether or not this allegation is true, it is clear that if Appellants elect to comply and await judicial determination of validity in subsequent piecemeal litigation, the process would be costly and inefficient.

Id. at 1339-40 (citations omitted). Recognizing that Arsenal Coal involved a pre-enforcement challenge to new regulations, this Court has clarified that

statutory, post-enforcement review is adequate *unless the regulation itself causes actual, present harm.* In other words, unless the regulation itself is self-executing, there is no harm done to the litigant until [DEP] takes some action to apply and enforce its regulations, in which case the normal post-enforcement review process is deemed an adequate remedy.

Duquesne Light Company, Inc. v. Department of Environmental Protection, 724 A.2d 413, 417 (Pa. Cmwlth. 1999) (citation omitted) (emphasis added). See also

---

[11] Act of May 31, 1945, P.L. 1198, as amended.

Rouse & Associates – Ship Road Land Limited Partnership v. Pennsylvania Environmental Quality Board, 642 A.2d 642, 645, 647 & n.2 (Pa. Cmwlth. 1994) (holding that a developer had standing under Arsenal Coal having demonstrated that it would suffer actual and immediate harm *before* DEP enforced new regulations because it would have to expend a significant amount of time and money simply to apply for the required permit); Costanza v. Department of Environmental Resources, 579 A.2d 447, 449-50 (Pa. Cmwlth. 1990) (holding that petitioners' business operations were not immediately subject to the regulations upon their promulgation, but only upon the department taking action on their application and, therefore, there was no immediate harm as in Arsenal Coal); Grand Central Sanitary Landfill, Inc. v. Department of Environmental Resources, 554 A.2d 182, 184-85 (Pa. Cmwlth. 1989) (distinguishing Arsenal Coal on the bases that the focus there was on the industry-wide implication of challenged regulations, rather than the impact on a single petitioner, and the petitioner was not currently in violation of the challenged regulations such that it would be directly and immediately harmed thereby).

From this precedent, the pertinent inquiry in determining whether there is standing to bring a pre-enforcement action is whether the administrative process causes a petitioner to suffer immediate and actual harm *prior* to the actual enforcement of the challenged regulation or application of the interpretation. If a petitioner will suffer such harm, the petitioner has standing to seek pre-enforcement relief via a declaratory judgment action. Otherwise, post-enforcement review is sufficient.

13

Having considered and accepted as true the factual allegations set forth in the Petition for Review and the reasonable inferences deducible therefrom, Guarrasi, 25 A.3d at 400 n.5, we conclude that PIOGA has standing to bring the instant declaratory judgment action because PIOGA's members will suffer immediate and actual harm *before* submitting a permit application to DEP for consideration. PIOGA's members must obtain permits from DEP in order to conduct their drilling operations, and PIOGA has sufficiently alleged that DEP's continued application of Section 3215(c) to the permitting process, which could require those members to expend considerable time and money in order to simply apply for the permit, "adversely, directly and immediately impacts" PIOGA's members and, therefore, PIOGA has standing. Donahue, 98 A.3d at 1230.

The fact that PIOGA is challenging DEP's permitting process, rather than the facial validity of a statute or regulation, does not require a different result. PIOGA need not challenge the validity of Section 3215(c), the purported basis for DEP's use of the Public Resources Form and PNDI Policy, because our Supreme Court has already found that provision to be unconstitutional and enjoined its application in Robinson Township. Additionally, in Donahue, the OG did not challenge the validity of the RTKL, it challenged the OOR's asserted interpretation of certain provisions that would impact how OG would perform its own obligations and duties under the RTKL. Donahue, 98 A.3d at 1225-26, 1230. Thus, PIOGA is not precluded from challenging DEP's permitting process under the Declaratory Judgments Act.

14

## 2. Ripeness

DEP next argues that the present issues are not adequately developed or ripe for judicial review because PIOGA's generalized allegations pertaining to the delay and loss of property rights suffered by its members raise factual questions about how DEP interprets and applies Act 13 to any particular well permit application and the effects of that interpretation on PIOGA's members. DEP contends these factual issues must be developed at the administrative level before the Environmental Hearing Board (EHB). DEP further suggests that PIOGA will not be harmed by utilizing the administrative procedure because its members have been complying with the present permitting process, which is the same process DEP used before Robinson Township.

PIOGA responds that the factual issues asserted by DEP are immaterial to a determination of whether DEP has authority to impose the Public Resources Form and PNDI Policy requirements where the Supreme Court enjoined the application of Section 3215(c) in Robinson Township. This legal issue, PIOGA argues, is adequately developed to establish that an actual and ongoing controversy exists, and all the facts necessary to review this issue are adequately pled in the Petition for Review.

The justiciability doctrine of ripeness addresses whether judicial intervention occurs at the appropriate time. Town of McCandless v. McCandless Police Officers Association, 901 A.2d 991, 1002 (Pa. 2006). In deciding whether the doctrine of ripeness bars consideration of a declaratory judgment action, we consider "whether the *issues* are adequately developed for judicial review and what

15

hardship the parties will suffer if review is delayed." Rouse & Associates, 642 A.2d at 645 (emphasis added). "An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." Chester Community Charter School v. Department of Education, 996 A.2d 68, 80 (Pa. Cmwlth. 2010). A conflict need not have reached a "'full-fledged battle'" in order for a matter to be ripe for declaratory judgment. Pennsylvania Game Commission v. Seneca Resources Corporation, 84 A.3d 1098, 1103 (Pa. Cmwlth. 2014) (quoting Ronald H. Clark, Inc. v. Township of Hamilton, 562 A.2d 965, 968 (Pa. Cmwlth. 1989)). Rather,

> [i]f [the] differences between the parties concerned, as to their legal rights, have reached the state of antagonistic claims, which are being actively pressed on one side and opposed on the other, an actual controversy appears; where, however, the claims of the several parties in interest, while not having reached the active stage, are nevertheless present, and indicative of threatened litigation in the immediate future, which seems unavoidable, the ripening seeds of a controversy appear.

Lakeland Joint School District Authority v. School District of Township of Scott, 200 A.2d 748, 751 (Pa. 1964) (citation omitted).

Here, the issue set forth in the Petition for Review, whether DEP has the authority to impose certain requirements as part of its permitting process after Robinson Township, is adequately developed for purposes of ascertaining whether declaratory relief is warranted. The lack of a factual record does not mean that this issue is not ripe. PIOGA is not challenging the particular denial of a particular application of one of its members. PIOGA is challenging DEP's ability to apply those requirements on *any of its members* and is, essentially, an industry-wide challenge to DEP's permitting process, which is analogous to the challenge raised

16

in Arsenal Coal. It is apparent that a conflict between DEP and PIOGA's members concerning the validity of DEP's permitting process as applied to *all applicants* is "unavoidable [and] the ripening seeds of a controversy appear." Lakeland Joint School District Authority, 200 A.2d at 751. Declaratory judgment actions were designed, in part, to eliminate the substantial expense and uncertainty that results from the type of piecemeal litigation that DEP suggests will resolve an issue that will affect this entire industry. Bayada Nurses, Inc. v. Department of Labor and Industry, 8 A.3d 866, 876 (Pa. 2010). "The declaration sought will practically help to end the controversy" and "[l]iberally construing and administering the Declaratory Judgments Act, as we must," the claims set forth in the Petition for Review are justiciable. Seneca Resources Corporation, 84 A.3d at 1104.

### b. *Administrative Remedies*

DEP next argues that PIOGA and its members have an adequate remedy at law, an administrative appeal to the EHB from the denial of a permit application, and that the failure to exhaust that remedy precludes judicial consideration of the Petition for Review. DEP further argues that PIOGA has not established that one of the exceptions to the failure to exhaust administrative remedies doctrine applies. It asserts that Arsenal Coal and its progeny are not applicable because, unlike in those cases, this matter does not involve an agency exceeding its statutory authority by promulgating illegal regulations or a pre-enforcement challenge seeking to enjoin DEP from enforcing a new regulation. DEP maintains that the Petition for Review is an as-applied challenge to the permitting process, not a facial challenge to a statute or regulation, and the outcome is dependent upon the individual circumstances of each permit application. In this way, DEP asserts, this

17

matter is analogous to Funk v. Department of Environmental Protection, 71 A.3d 1097 (Pa. Cmwlth. 2013).

PIOGA responds that it need not pursue the existing administrative remedies because this Court has jurisdiction to resolve facial challenges concerning the validity of DEP's permitting process in *all* of its applications on the basis that DEP's process is *per se* invalid. PIOGA explains that it could not pursue a facial challenge to the underlying statutory support for the allegedly invalid permitting process because the Supreme Court has already found Section 3215(c) unconstitutional. Finally, PIOGA observes that the relief suggested by DEP, an appeal to the EHB, is not adequate because it is challenging the "process" as a whole, not the denial of a particular permit or license, and it is seeking declaratory relief, which the EHB does not have the authority to grant. Empire Sanitary Landfill, Inc. v. Department of Environmental Resources, 684 A.2d 1047, 1055 (Pa. 1996).

"It is well settled that when an adequate administrative remedy exists, this Court lacks jurisdiction to entertain a suit in either law or equity." Grand Central Sanitary Landfill, Inc., 554 A.2d at 184. "The doctrine of exhaustion of administrative remedies requires a party to exhaust all adequate and available administrative remedies before the right of judicial review arises." Empire Sanitary Landfill, Inc., 684 A.2d at 1053. It is a court-made doctrine "intended to prevent premature judicial intervention into the administrative process" and "operates as a restraint on the exercise of a court's equitable powers and a

18

recognition of the legislature's direction to comply with statutorily-prescribed remedies." Id.

However, there are several exceptions to this doctrine that, if applicable, would allow a petitioner to file a complaint in this Court's original jurisdiction under the Declaratory Judgments Act. Id. at 1055. One such exception is where the available statutory remedy is inadequate. Id. at 1054. Another is set forth in Arsenal Coal and provides, as discussed above, that "[w]here the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish the justiciability of the challenge in advance of enforcement." Arsenal Coal, 477 A.2d at 1339. We conclude that, under either of these exceptions, PIOGA's Petition for Review is not barred by its failure to exhaust its members' administrative remedies before seeking judicial review of the issue set forth therein.

First, as our Supreme Court recognized in Empire Sanitary Landfill, Inc., although the EHB has some authority in certain cases to consider constitutional questions concerning regulations within its jurisdiction, "[i]t does not . . . have the power to grant declaratory judgment and injunctive relief pursuant to the Declaratory Judgment[s] Act, . . . because only courts of record of the Commonwealth have that jurisdiction." Empire Sanitary Landfill, Inc., 684 A.2d at 1055. Moreover, the EHB only has jurisdiction to review post-enforcement matters and may not decide a pre-enforcement challenge. Machipongo Land and Coal Company, Inc. v. Department of Environmental Resources, 648 A.2d 767, 770 (Pa. 1994), vacated in part on other grounds, 676 A.2d 199 (Pa. 1996). The

19

EHB's inability to undertake pre-enforcement review or award this relief may render the available statutory remedy inadequate. Empire Sanitary Landfill, Inc., 684 A.2d at 1054.

Although DEP asserts that this is an as-applied challenge to the permitting process, it is apparent from the Petition for Review that PIOGA is challenging the facial validity of DEP's permitting process, to the extent based on Section 3215(c), as applied to every oil and gas permit application submitted to DEP. PIOGA seeks an order from this Court declaring that the process presently used by DEP, which DEP acknowledges is the same as before the Supreme Court found Section 3215(c) unconstitutional in Robinson Township, is contrary to law, and enjoining DEP from continuing to enforce and apply those unconstitutional provisions. PIOGA's attempt to *enforce* the Supreme Court's determination that Section 3215(c), the alleged enabling legislation here, is unconstitutional as a means to void DEP's permitting requirements is no different than challenging, in the first instance, the constitutionality of the enabling legislation in an effort to void administrative regulations promulgated pursuant to that legislation. PIOGA's Petition for Review is a facial challenge to DEP's permitting process and, for this reason, Funk is distinguishable. The EHB does not have jurisdiction to consider PIOGA's pre-enforcement challenge or the authority to grant the relief requested and, consequently, the administrative remedy DEP purports is available is not adequate to address PIOGA's challenge. Empire Sanitary Landfill, Inc., 684 A.2d at 1054-55; Machipongo Land and Coal Company, Inc., 648 A.2d at 770.

Second, this matter falls within the paradigm of <u>Arsenal Coal</u> and its progeny and, therefore, PIOGA's pre-enforcement challenge to DEP's permitting process is proper. One of PIOGA's members could apply for a permit, not submit a Public Resources Form or comply with the PNDI Policy, and appeal the denial of the permit to the EHB. However, as our Supreme Court explained: "[t]his proposed avenue of review is beset with penalties and impediments to the operation of the . . . industry rendering it inadequate as a satisfactory alternative to the . . . action initiated under the original jurisdiction of Commonwealth Court." <u>Arsenal Coal</u>, 477 A.2d at 1340. We are not persuaded by DEP's attempts to distinguish <u>Arsenal Coal</u> from this matter and decline to require "piecemeal litigation [that] would be costly and inefficient," <u>id.</u>, in order to obtain a judicial determination regarding the legal rights and obligations of PIOGA's members following <u>Robinson Township</u>.

## IV. Conclusion

For these reasons, we conclude that PIOGA has asserted claims in the Petition for Review that are justiciable and that PIOGA was not required to exhaust the administrative remedies before seeking judicial review of DEP's permitting process in this Court's original jurisdiction under the Declaratory Judgments Act. Accordingly, we overrule DEP's POs.

_____
**RENÉE COHN JUBELIRER, Judge**

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Independent Oil & Gas
Association,

                 Petitioner

          v.

Commonwealth of Pennsylvania,
Department of Environmental
Protection,

                Respondent

:
:
:
:
:
:
:
:   No. 321 M.D. 2015
:
:
:
:
:
:
:

## O R D E R

**NOW**, December 29, 2015, the Preliminary Objections filed by the Commonwealth of Pennsylvania, Department of Environmental Protection (DEP) are hereby **OVERRULED**. DEP shall file an Answer to Petitioner's Petition for Review of a Complaint for Declaratory Relief within thirty (30) days of the date of this Order.

 

_____
**RENÉE COHN JUBELIRER, Judge**