IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Timothy and Debra Shrom,      :
           Petitioners      :
           :
       v.      :     No. 241 M.D. 2024
           :
Pennsylvania Underground      :     Submitted: April 8, 2025
Storage Tank Indemnification Board,      :
           Respondent      :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: May 19, 2025

This action in our original jurisdiction concerns the reimbursement of remediation costs from the Underground Storage Tank Indemnification Fund (Fund) pursuant to the pertinent provisions of the Storage Tank and Spill Prevention Act (Act).[1] Before the Court is the preliminary objection of Respondent Pennsylvania Underground Storge Tank Indemnification Board (Board), which objects to the petition for review of Petitioners Dr. Timothy and Debra Shrom (Petitioners or Shroms) on the ground that the Shroms failed to exhaust available and adequate administrative remedies.

Upon review, we sustain the Board's preliminary objection and dismiss the petition for review.

## I.     Background and Procedural History

The dispute underlying this case previously was before both this Court and the Pennsylvania Supreme Court. *See Shrom v. Pennsylvania Underground Tank*

---

[1] Act of July 6, 1989, P.L. 169, *as amended*, 35 P.S. §§ 6021.101-.2104.

*Indemnification Board*, 261 A.3d 1082 (Pa. Cmwlth. 2021) (*Shrom I*), *aff'd*, 292 A.3d 894 (Pa. 2023) (*Shrom II*). Our Supreme Court in *Shrom II*, relying in part on this Court's decision in *Shrom I*, summarized the pertinent facts as follows:

> The subject property is located at 435 West Fourth Street, Quarryville, Pennsylvania (the Property). Mrs. Shrom inherited the Property following the death of her mother in 2014. At that time, the Property was leased and operated as a convenience store, Subway franchise, and retail fuel sales facility. That lease was pursuant to an oral agreement between Mrs. Shrom and Edward Boornazian or his solely owned limited liability company, Quarryville Subway LLC (Tenant). When Mrs. Shrom inherited the Property, it contained five [underground storage tanks (USTs)] situated side-by-side: three gasoline tanks, a diesel tank, and a kerosene tank. Prior to 2014, Jerome H. Rhoads, Inc., was registered with [the Department of Environmental Protection (DEP)] as the owner and operator of the USTs, but, on October 16, 2014, that corporation transferred its interest in the [USTs] to Tenant.
>
> On February 3, 2015, Tenant submitted an amendment to the USTs' registration to DEP, reflecting Tenant's ownership thereof. Approximately one year later, in early 2016, Tenant ceased pumping fuel at the Property, and, on May 17, 2016, Tenant amended the USTs' registration with DEP to reflect an out-of-service status. In April 2017, Tenant vacated the Property, leaving the USTs behind. On June 4, 2017, the registration for the USTs expired because the Section 503[2] registration fees were unpaid. DEP sent letters to Tenant at the Property concerning the unpaid Section 503 registration fees in July, August, and September of 2017. On October 13, 2017, DEP referred the debt to [the Office of Attorney General (OAG)]. OAG sent letters concerning the unpaid Section 503 registration fees to the Property in October and November of 2017. Neither DEP's nor OAG's letters were

---

[2] Section 503(a) of the Act requires every owner of a UST to register it with DEP and pay the associated registration fee. 35 P.S. § 6021.503(a). Unregistered USTs may not be operated or used in any way. *Id.*

returned as undeliverable, but the Shroms did not reside at the Property and did not open mail addressed to Tenant. Thus, the Shroms did not read any of the notices concerning the unpaid Section 503 registration fees. Neither DEP nor OAG directly notified the Shroms of the unpaid Section 503 registration fees.

In 2017, the Shroms engaged a contractor to remove the USTs. On September 12, 2017, the Shroms' contractor submitted a tank system closure notification form to DEP, which called for a complete system closure and the removal of all five USTs. Dr. Shrom signed the form as the tank system owner, although he later asserted that this was inadvertent because neither he nor Mrs. Shrom ever owned the USTs. Although the DEP permanent tank closure planning checklist calls for verification that the USTs are registered, no one registered the USTs at that time.

On December 28, 2017, during the removal of the USTs, a diesel fuel release was discovered. On January 5, 2018, additional gasoline contamination was discovered on the Property. The Shroms' contractor proceeded to remove the USTs and the contaminated soil. At the time that the release was discovered, all Section 705[3] fees payable to the Fund were current, because no such fees were required while the tanks were in out-of-service status. However, the Section 503 registration fees remained unpaid, and the USTs accordingly remained unregistered.

On January 5, 2018, the Shroms' environmental consultant reported the release to the Fund. The Fund assigned the claim to its third-party claims administrator to investigate the Shroms' eligibility for coverage from the Fund. During that investigation, the Shroms' environmental consultant informed them that the Section 503 registration fees had not been paid for 2017. The following day, the Shroms paid the

---

[3] Section 705(d)(1) of the Act requires owners, operators, or certified tank installers to pay fees that are "set on an actuarial basis in order to provide an amount sufficient to pay outstanding and anticipated claims against the . . . Fund in a timely manner." 35 P.S. § 6021.705(d)(1). Section 705 fees are based on the gallon capacity of each tank and are the chief source of financing for the Fund. *Shrom II*, 292 A.3d at 897.

outstanding Section 503 registration fees to OAG's collection agent.

In a letter dated May 16, 2018, the Fund denied coverage for the Shroms' claim on the basis that the USTs were not registered, and the Section 503 registration fees were not paid, at the time that the release was discovered.[4] The Shroms sought review of that decision with the Fund's Executive Director, who affirmed the denial of coverage in a letter dated February 21, 2019. The Shroms then requested a formal administrative hearing, and a Presiding Officer was appointed to adjudicate the matter. The Presiding Officer agreed that the Shroms were ineligible for compensation from the Fund and submitted a Proposed Report and Recommendation (Report) to that effect with the Board.

---

[4] A claimant seeking reimbursement from the Fund for remediation costs must satisfy the eligibility requirements in Section 706 of the Act, 35 P.S. § 6021.706. That section provides as follows:

> In order to receive a payment from the [ ] Fund, a claimant shall meet the following eligibility requirements:
>
> > (1) The claimant is the owner, operator or certified tank installer of the tank which is the subject of the claim.
> >
> > (2) The current fee required under [S]ection 705 has been paid.
> >
> > (3) The tank has been registered in accordance with the requirements of Section 503.
> >
> > (4) The owner, operator or certified tank installer has obtained the appropriate permit or certification as required under [S]ections 108, 501 and 504 [of the Act, 35 P.S. §§ 6021.108, 6021.501, 6021.504].
> >
> > (5) The claimant demonstrates to the satisfaction of the [B]oard that the release that is the subject of the claim occurred after the date established by the [B]oard for payment of the fee required by section 705(d).
> >
> > (6) Additional eligibility requirements which the board may adopt by regulation.

35 P.S. § 6021.706 (citations omitted).

4

The Shroms filed exceptions to the Presiding Officer's Report with the Board. Upon consideration of that Report, the Shroms' exceptions thereto, the Fund's response, and the underlying record, the Board issued an Adjudication and Order, which essentially denied the Shroms' exceptions, adopted the Presiding Officer's Report in full, and affirmed the Fund's denial of coverage for the Shroms' claim.

*Shrom II*, 292 A.3d 901-902 (quoting, in part, *Shrom I*, 261 A.3d at 1085-86) (original editing marks removed).

The Shroms petitioned for review in this Court, and we reversed. We concluded that the Board erred in interpreting the eligibility requirement in Section 706(3) of the Act to require that USTs be registered, and the Section 503 registration fees paid, at the time that the release giving rise to the claim was discovered. *Shrom I*, 261 A.3d at 1095-96. Instead, we held that the Board's timing rule created an eligibility requirement that Section 706(3) did not impose. We further concluded that the Board's rule was void and unenforceable because it was not duly promulgated as a regulation pursuant to Section 706(6) of the Act. *Id.* at 1095. We accordingly reversed the Board's determination and remanded "for computation of the amount of coverage for the Shroms' claim for remediation costs." *Id.* at 1097.

Our Supreme Court affirmed, concluding that Section 706(3) of the Act requires "that, in order for a claimant to be eligible to receive payment from the Fund for remediation costs, the subject USTs have to be registered and the Section 503 registration fees have to be paid *at any time* prior to the Fund's eligibility determination." *Shrom II*, 292 A.3d at 916 (emphasis in original). The High Court further concluded that, because the Board and Fund had been applying an incorrect interpretation of the eligibility requirement in Section 706(3), the Fund's rule in that regard was an unlawful, *de facto* regulation. *Id.* at 917. Based on those conclusions,

5

the Court held that the Shroms "established that they met the eligibility requirement set forth in Section 706(3) of the Act." *Id.*

Approximately one year after the Supreme Court's decision, the Shroms filed the instant petition for review in our original jurisdiction. Therein, the Shroms allege as follows. On April 25, 2023, the Fund's consultant, "ICF," sent a letter to the Shroms' counsel advising that reimbursements from the Fund for remediation costs were subject to certain limitations set forth in "Bulletin #8." (Petition for Review (PFR), ¶¶ 37-38; Ex. 1.) On September 26, 2023, ICF sent a second letter advising the Shroms' counsel that, pursuant to Bulletin #8, the Fund would pay only 42.3% of the Shroms' total claim, or $71,369.32. (PFR, ¶ 39; Ex. 2).

Bulletin #8 is a guidance document promulgated by the Pennsylvania Insurance Department that provides guidelines for the payment of claims related to soil excavation as part of an interim remedial action (IRA). (PFR, Ex. 3.) The purpose of Bulletin #8 is to address problems with over-excavation of contaminated soil and claims for reimbursement of the excessive costs associated with such excavation. *Id.* at 2-3. To protect against excessive claims, Bulletin #8 establishes a set of presumptions regarding the volumes of soil excavation that will be deemed by the Fund to be "necessary and reasonable." *Id.* at 3. Bulletin #8 accordingly establishes a Fund "policy" that the following soil excavation amounts will be presumed to be reasonable and necessary:

> [For] [s]ingle or multiple UST systems with a combined capacity up to and including 10,000 gallons – 400 tons.
>
> [For] [s]ingle or multiple UST systems with a combined capacity greater than 10,000 gallons – 500 tons.

*Id.* Excavations of soil in amounts larger than those set forth in the above presumptions will be presumed to *not be* reasonable and necessary. To overcome that presumption,

a claimant must make a "clear and compelling case" by submitting additional information to the Fund including, at a minimum, photographs of tanks and removal activities, documentation of soil, groundwater, waste water, and other waste disposal and recycling, laboratory reports, field notes, and a written narrative of remediation activities. *Id.*

In their PFR, the Shroms first contend that Bulletin #8, like the interpretive rule at issue in *Shrom I* and *Shrom II*, is an unlawful *de facto* regulation. (PFR, ¶¶ 40-66.) The Shroms accordingly assert that the limits imposed by the Fund on their reimbursement claim pursuant to the formulae in Bulletin #8 are invalid. (PFR, Ex. 4, at 2) ("Due to [the] failure to demonstrate that excavation and disposal of 2,128 tons of soil as interim remedial action was reasonable and necessary to mitigate threat to human health or the environment, as a compromise [the Fund] reimbursed up to the volumes set forth in Bulletin #8[.]). The Shroms argue that the presumptions and burden of proof set forth in Bulletin #8 were not promulgated in accordance with Sections 705(b) and 706(6) of the Act and are not contained anywhere in the claims procedures promulgated by the Board. (PFR, ¶¶ 61-62; 25 Pa. Code §§ 977.31-977.40.)

Second, the Shroms allege that Bulletin #8, even if construed as an interpretive rule, is nevertheless unenforceable because it does not track the meaning of the pertinent Sections of the Act but, instead, imposes additional requirements that the Act does not. (PFR, ¶¶ 67-69.) The Shroms also argue that Bulletin #8 is unwise and contrary to the legislative intent undergirding the Act because it creates arbitrary limits on what levels of soil remediation are presumptively reasonable and necessary and disincentivizes claimants from remediating large amounts of contaminated soil. *Id.*, ¶¶ 70-79. The Shroms thus insist that Bulletin #8 is contrary to the Act and

7

incompatible with both its remedial character and this Court's mandate that it be construed liberally. *Id.*, ¶¶ 80-90; *Shrom I*, 261 A.3d at 1096.

The Shroms assert three claims against the Board in this Court: (1) a claim for declaratory judgment seeking a declaration that Bulletin #8 is an unlawful *de facto* regulation and that the Shroms are entitled to full reimbursement of all actual remediation costs they have incurred without any reference to Bulletin #8; (2) in the alternative, a claim for declaratory judgment seeking a declaration that Bulletin #8 is an invalid interpretive rule and that the Shroms are entitled to full reimbursement without any reference to Bulletin #8; and (3) a claim for a writ of mandamus directing the Fund to reimburse the Shroms for all actual remediation costs incurred without reference to Bulletin #8. (PFR, ¶¶ 111-27.)

The Board filed the instant preliminary objection to the PFR on April 29, 2024. Therein, the Board contends that this Court is without jurisdiction over the claims asserted in the PFR because the Shroms have failed to exhaust the administrative remedies available to them via the administrative appeal procedure before the Executive Director and the Board. (Preliminary Objection (PO), ¶¶ 19-23; 35 P.S. § 6021.705(b); 25 Pa. Code § 977.61.) The Board points out that, although the PFR does not mention it, the Shroms in fact appealed the Fund's decision on their reimbursement claim to the Executive Director. (PO, ¶ 13 n.2.) The Shroms admit this fact in their Answer to the PO, noting that the Executive Director denied their appeal challenging the validity of Bulletin #8. (Answer to PO, ¶ 13; Ex. B.) They nevertheless contend that appeals to the Executive Director and the Board would be exercises in futility. (Answer to PO, ¶ 13.) The Shroms did, however, file an administrative appeal to the Board, in which they note their filing of this action in our original jurisdiction and indicate that the appeal is merely to preserve their rights before the Board in the event

8

that we dismiss this action on jurisdictional grounds. *See* Board Br., Ex. 4. The Board stayed the administrative appeal on July 25, 2024, pending the disposition of the litigation in this Court. *Id.*, Ex. 5; Shroms' Br., Ex. A.[5]

## II. **Discussion**[6]

### A. **Statutory Framework**

"In an effort to encourage remedial efforts whenever a release from a UST occurs, the General Assembly, through the enactment of Section 704(a) of the Act, 35 P.S. § 6021.704(a), established the Fund and directed it to reimburse owners, operators, and certified installers for the costs they incur in taking corrective action following a release from a UST. *See* Section 704(a)(1) of the Act[.]" *Shrom II*, 292 A.3d at 897. The Board is empowered under the Act to establish procedures for the submission of claims for costs incurred for remediation of releases from USTs. 35 P.S. § 6021.705(b). Eligible claims "shall be paid upon receipt of information clearly showing that reimbursable claim costs are reasonable, necessary, and directly related to the release from the [UST] that is the subject of the claim. The [B]oard, by regulation, may establish a system for prioritizing claims." *Id.* The Board also establishes fees payable by the owners, operators, or certified installers of USTs, *see id.* § 6021.705(d), (e), adopts, amends, and repeals rules and regulations governing its operations and the operation of the Fund, *see id.* § 6021.705(f)(2), and conducts examinations,

---

[5] Although the records from the Shroms' appeal to the Board are not attached to the PFR, PO, or Answer to PO, both parties refer to them and do not contest our consideration of them in ruling on the PO.

[6] In ruling on preliminary objections, we must accept as true all well-pleaded material facts and all inferences reasonably deducible from those facts. *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1123 (Pa. Cmwlth. 2015). We are not, however, constrained to accept as true unwarranted inferences, conclusions of law, or expressions of opinion. *Id.* To sustain preliminary objections, we must be certain that the law will not permit recovery, and we resolve any doubts in this respect in favor of the non-moving party. *Id.*

9

investigations and hearings on any matter necessary to determine the propriety of any claim. *Id.* § 6021.705(f)(4).

In turn, the Board has promulgated rules for the administration of the Fund, including the processing of claims. *See* 25 Pa Code § 977.31-977.40. Appeals of decisions of the Fund must be made in writing to the Fund's Executive Director within 35 days of the mailing date of the decision. 25 Pa. Code § 977.61(a). Appeals of decisions of the Executive Director must be made to the Board within 35 days of the mailing date of the Executive Director's decision. 25 Pa. Code § 977.61(b). Adjudications of the Board are then appealed to this Court in accordance with Section 702 of the Administrative Agency Law, 2 Pa. C.S. § 702. 25 Pa. Code § 977.61(c).

### B. Exhaustion Doctrine

> The doctrine of exhaustion of administrative remedies requires that a person challenging an administrative decision must first exhaust all adequate and available administrative remedies before seeking relief from the courts. The purposes of this exhaustion requirement are to prevent premature judicial intervention in the administrative process and ensure that claims will be addressed by the body with expertise in the area. Thus, where the legislature has provided an administrative procedure to challenge and obtain relief from an agency's action, failure to exhaust that remedy bars this Court from hearing claims for declaratory or injunctive relief with respect to that agency action.

*Funk v. Department of Environmental Protection*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013) (citations omitted). Thus, where a petitioner in this Court has failed to exhaust available administrative remedies, the exhaustion rule will bar actions for declaratory and mandamus relief. *Keystone ReLeaf LLC v. Department of Health*, 186 A.3d 505, 513-14 (Pa. Cmwlth. 2018) (*en banc*); *Mueller v. Pennsylvania State Police Headquarters*, 532 A.2d 900, 905 (Pa. Cmwlth. 1987).

10

This rule is not inflexible, and there are three traditional exceptions to it: (1) where the jurisdiction of an administrative agency is challenged; (2) where the constitutionality of a statutory scheme or its validity is challenged; and (3) where the administrative remedies available are inadequate. *Keystone ReLeaf, LLC*, 186 A.3d at 515. Pennsylvania Courts also have developed a narrowly tailored additional exception to the exhaustion doctrine that permits the pre-enforcement review of a statute or regulation in certain limited circumstances. *See Arsenal Coal Co. v. Department of Environmental Resources*, 477 A.2d 1333, 1338 (Pa. 1984); *Bayada Nurses, Inc. v. Department of Labor and Industry*, 8 A.3d 866, 874-76 (Pa. 2010); *EQT Production Co. v. Department of Environmental Protection*, 130 A.3d 752, 758 (Pa. 2015); *Pennsylvania Independent Oil and Gas Association v. Department of Environmental Protection*, 135 A.3d 1118, 1128 (Pa. Cmwlth. 2015).

## C.    Analysis

The Board argues that the Shroms' PFR must be dismissed because they failed to exhaust the adequate and available administrative remedies provided in the Act and the Board's regulations. The Board contends that the only disputed issue in this matter is the amount of the reimbursement to which the Shroms are entitled, which may and should be determined in the administrative process, of which the Shroms already have availed themselves. The Board further insists that the Shroms are not entitled to pre-enforcement review because this matter does not involve ongoing and continuing harm but, rather, merely involves how the amount of the reimbursement of the Shroms' remediation costs should be calculated, a matter that is squarely within the Board's ability, expertise, and fact-finding powers. (Board Br. at 9-13.)

The Shroms argue in response that there is no need to proceed further before the Board because the questions presented in their PFR are ones of law—

challenges to Bulletin #8 on the ground that it is an unlawful *de facto* regulation and/or interpretive rule. The Shroms further argue that the Board does not have any particular expertise regarding, or inclination to decide fairly, those questions and that there is no need for the further development of a factual record. The Shroms contend that the Supreme Court's decision in *EQT Production Co.* is dispositive and that the Board cannot provide an adequate remedy in this instance where the Shroms seek both declaratory and mandamus relief. (Shroms Br. at 5-8.) The Shroms therefore appear to contend both that the administrative remedies affordable by the Board are inadequate and that pre-enforcement review of Bulletin #8 is warranted here.[7]

### 1.    Adequacy of the Administrative Remedy Before the Board

This Court may entertain petitions for review raising issues that otherwise could be litigated and decided in the first instance via administrative proceedings if the administrative remedy would be inadequate.

> An administrative remedy is inadequate if it either: (1) does not allow for adjudication of the issues raised . . . or (2) allows irreparable harm to occur to the plaintiffs during the pursuit of the statutory remedy. [*Commonwealth ex rel. Nicholas v. Pennsylvania Labor Relations Board*], 681 A.2d [157,] 161 [(Pa. 1996)]. A party claiming this exception must make a clear showing that the remedy is inadequate. *Commonwealth v. Eisenberg*, [ ] 454 A.2d 513, 515 ([Pa.] 1982).

*Keystone ReLeaf LLC*, 186 A.3d at 517 (internal quotations and some editing removed). The Shroms argue that their remedy before the Board is inadequate because the Board does not have jurisdiction to grant declaratory or mandamus relief and because the Board "would have no appetite to consider" the Shroms' challenge to

---

[7] No other exceptions to the exhaustion doctrine appear to apply here. The Shroms do not challenge the jurisdiction of the Board or the constitutionality or validity of a statutory scheme.

12

Bulletin #8. (Shroms' Br. at 7.) The Shroms further argue that the Board has no discretion in this instance to award a reimbursement amount other than 1) the full amount of the Shroms' claim, or 2) the binding amount as determined by the formula in Bulletin #8. *Id.* at 7-8. They lastly dismiss the undisputed fact that they have filed an appeal to the Board and argue that the Board would not be a fair arbiter of the issues they now attempt to present in this Court.

We conclude that the administrative remedies available to the Shroms via an appeal to the Board (which they already have filed and with which they are very familiar, *see Shrom I* and *II*) are adequate and complete. First, the Shroms challenge the validity of Bulletin #8, which appears to be an interpretive rule or guideline that establishes certain benchmarks for reimbursement based on the volume of soil excavated during the remediation process. Like the challenges in *Shrom I* and *II*, the challenges to Bulletin #8 ought to be presented initially to the Board given that the Board is the entity that apparently has instituted the formulae in Bulletin #8 and can reevaluate it in the first instance. Moreover, the fact that the Board cannot grant declaratory or mandamus relief only underscores why the Shroms' appeal before the Board should be completed before this Court reviews any decision and considers whether declaratory and/or mandamus relief is appropriate. Such relief ought not be granted by this Court unless or until the appropriate administrative agency grants or denies *administrative* relief.

Second, the options available to the Board are not "binary" as the Shroms suggest. Bulletin #8 appears to establish certain presumptions regarding what remediation costs are considered, or presumed, to be reasonable and necessary. However, claimants also may present additional evidence to overcome those presumptions and establish that a higher amount is reasonable and necessary. The

13

Board is empowered and duty-bound to conduct a hearing and receive such evidence if claimants desire to present it. Although the Shroms appear to have no intention or interest in presenting evidence because of their facial legal challenge to Bulletin #8, we should not review the Shroms' claim based on their representations of what they *would or would not have done* before the Board. If the Shroms simply intend to argue before the Board that Bulletin #8 is invalid and present no other argument or evidence, the appeal should proceed fairly quickly (indeed, it likely *would have been* completed already with this appeal now appropriately before this Court in our appellate jurisdiction). In short, there is no reason not to insist that the Shroms' already-filed appeal before the Board proceed to its conclusion. Although the Shroms do not believe the Board has any "appetite" to consider their claim objectively, such subjective dissatisfaction does not vitiate the need to follow well-established and adequate administrative procedures.

## 2. Pre-enforcement Review

We explained, albeit in an unreported opinion, the pre-enforcement review exception to the exhaustion doctrine in *Repsol Oil & Gas USA, LLC v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 613 M.D. 2022, filed July 23, 2024):

> The purpose of pre-enforcement review is to save a petitioning party, and all others similarly situated, from having to choose between two unworkable options: complying with a law of new or questionable application—at substantial cost and with uncertainty going forward—or willfully violating that law to provoke enforcement so as to challenge it.
>
> Because pre-enforcement review is an exception to the general rule of exhaustion, its application is limited. First, if the third option of an administrative adjudication exists which the petitioner could pursue without any "immediate

14

> obligation or threat posed by the challenged agency action," the petitioner must pursue the administrative remedy first. Second, where the petitioner's concerns are not industry-wide, but are instead about "application of the statute or regulation in a particular case," courts typically require exhaustion and disfavor pre-enforcement review. Third, it is pre-enforcement review, so the regulation is typically immediately effective and self-executing absent any agency action to apply or enforce it.

*Id.*, slip op. at 15-16 (internal citations omitted).[8]

In *EQT Production*, upon which the Shroms rely heavily, a well operator discharged contaminated water into the soil, which discharge potentially invoked civil penalties exceeding $4.5 million together with open-ended and cumulative additional penalties of $10,000 per day for ongoing violations. DEP proposed that the operator agree to pay the penalties, after which the operator filed a declaratory judgment action in our original jurisdiction. In response, DEP filed a complaint with the Environmental Hearing Board (EHB) to collect both the original and ongoing cumulative penalties. We sustained preliminary objections to the operator's petition for review and dismissed it on the ground that the EHB had exclusive jurisdiction to determine the propriety of the requested penalties. *Id.* at 754-55.

Our Supreme Court accepted review and considered "whether a company threatened by an administrative agency with ongoing, multi-million-dollar penalties per such agency's interpretation of a statutory regime has the right, immediately, to seek a judicial declaration that the agency's interpretation is erroneous." *Id.* at 753. That Court ultimately reversed, concluding that "the impact of [DEP's] threat of multi-million dollar assessments against [the operator] was sufficiently direct, immediate,

---

[8] Unreported decisions of this Court issued after January 15, 2008, may be cited for their persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). Here, we cite to *Repsol Oil & Gas* for its thorough and accurate summary of the pre-enforcement review exception to the exhaustion doctrine.

and substantial to create a case or controversy justifying pre-enforcement judicial review via a declaratory judgment proceeding, and that exhaustion of administrative remedies relative to the issues of statutory interpretation that the company has presented was unnecessary." *Id.* at 759. Central to the High Court's holding were the facts that (1) the amount of penalties and potential penalties was large, open-ended, and growing continuously; (2) only questions of law were presented; and (3) the operator was unable to pursue the administrative process adequately given that the agency took no action with the EHB until after the operator had filed his petition for review in this Court, and the operator required quick disposition in the face of its mounting penalty exposure. *Id.* at 755, 759.

Here, we conclude that *EQT Production* is readily distinguishable and that the Shroms have not established that pre-enforcement review is necessary or appropriate. First, there is no record at all with regard to Bulletin #8, how it was promulgated, and how it typically is utilized. Although the Shroms insist that no further record is necessary, the Board should be given the opportunity to explain, via testimony and other evidence if necessary, how Bulletin #8 was adopted and is implemented and whether and how much discretion is involved in utilizing its formulae. Those facts could potentially be established via stipulation, as was the case in *Shrom I* and *II*. Second, there is no ongoing injury to the Shroms as there was in *EQT Production Co.*, where the petitioning party was accumulating vast sums of daily civil penalties. Here, the pleadings indicate that the Shroms have completed the remediation that they intend to do and have submitted their claim for full reimbursement. No further sums are amassing, and the Board ought to have the first opportunity to assess the reasonableness and necessity of the costs claimed by the Shroms, with or without applying Bulletin #8. Lastly, nothing in the administrative proceedings below has inhibited the Shroms

16

from promptly seeking review before the Board, which can grant the relief they request. There is a pending appeal before the Board, filed by the Shroms, which may and should proceed to its conclusion before this Court conducts any review.

### III.    Conclusion

Because we conclude that the Shroms have failed to exhaust available and adequate administrative remedies before the Board, we sustain the Board's preliminary objection and dismiss the petition for review.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dr. Timothy and Debra Shrom,  :
     Petitioners  :
          :
    v.     : No. 241 M.D. 2024
          :
Pennsylvania Underground  :
Storage Tank Indemnification Board, :
     Respondent  :

## _**ORDER**_

  AND NOW, this 19th day of May, 2025, the preliminary objection of the Pennsylvania Underground Storage Tank Indemnification Board is SUSTAINED, and the petition for review filed by Petitioners Dr. Timothy and Debra Shrom is hereby DISMISSED.

         _____
         PATRICIA A. McCULLOUGH, Judge