# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Valley Forge Chapter of Trout
Unlimited,
                       Petitioner

              v.

Township of Tredyffrin and
Pennsylvania Turnpike Commission,
                    Respondents

:
:
:
:
:
:   No. 161 M.D. 2016
:   Argued: October 17, 2016
:
:
:
:

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** Judge
                      **HONORABLE JOSEPH M. COSGROVE,** Judge
                      **HONORABLE JAMES GARDNER COLINS,** Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: December 20, 2016**

Before this Court in our original jurisdiction are the Preliminary Objections (POs) of the Township of Tredyffrin (Township) and the Pennsylvania Turnpike Commission (PTC) (together, Respondents) to the Petition for Review filed by the Valley Forge Chapter of Trout Unlimited (Petitioner). The Petition for Review seeks a declaration that the settlement agreement (Agreement) between Respondents associated with the reconstruction of a portion of the Pennsylvania Turnpike (Turnpike) running through the Township is null and void. For the reasons that follow, we sustain the Respondents' POs in part and overrule in part.

## I. BACKGROUND

Petitioner is "an organization . . . devoted to[, *inter alia*,] restoring, protecting and preserving the Valley Creek Watershed and the Trout Creek Watershed since 1976, having spent money and time on projects to further these goals." (Petition for Review ¶ 8.) It has members who use the creeks within the "Township and downstream for fishing, recreation[,] and aesthetic enjoyment and will be harmed by the effects of pollution from uncontrolled stormwater runoff . . ." (Id. ¶ 9.) Petitioner also has one member who owns land in the Township and that land will allegedly be harmed by the effects of the challenged action. (Id. ¶ 10.)

The Petition for Review alleges as follows. PTC plans to reconstruct a 6.4 mile portion of the Turnpike that runs through the Township. (Id. ¶ 13.) The reconstruction will widen the Turnpike from four lanes to six, and includes an expansion of the median and shoulders, and the replacement of various bridges, arch culverts, crossing pipes, noise barriers, and retaining walls. (Id. ¶¶ 14-15.) The reconstruction would also involve construction of "[stormwater] facilities and conveyance systems." (Id. ¶ 15.) Portions of the reconstruction area lie in the Valley Creek Watershed and Trout Creek Watershed. (Id. ¶ 19.) The Valley Creek Watershed is an "Exceptional Value Watershed" as defined by the Department of Environmental Protection's (DEP) regulations, 25 Pa. Code § 93.4(b), and Trout Creek Watershed is an "impaired waterway." (Id. ¶¶ 19, 21.)

A disagreement arose between Respondents. PTC acknowledged that, under its design plan for the reconstruction project, it could not comply with all of Township's stormwater standards. (Petition for Review, Ex. 1. (Agreement) at 2.) PTC asserted that its statutory mandate "is preeminent over the [Township's

2

ordinances] as a matter of law" and PTC need not comply with the ordinances. (Id. at 3.) The Township disagreed and "asserted that, as a matter of law, [Township's stormwater ordinances] are preeminent over the PTC Statutory Mandate." (Id.) In order to avoid extensive litigation, Respondents entered into the Agreement on January 19, 2016. (Id.) The relevant paragraphs of the Agreement provide as follows:

> WHEREAS, completion of the Total Reconstruction Project pursuant to [PTC's reconstruction plan] will allow the [PTC] to implement stormwater management controls throughout the Project Area to manage stormwater within the Valley Creek Watershed and the Trout Creek Watershed, respectively, where no such controls currently exist and, therefore, the Total Reconstruction Project will provide a net benefit for stormwater management controls within the Valley Creek Watershed and the Trout Creek Watershed, respectively; and
>
> WHEREAS, completion of the Total Reconstruction Project pursuant to the [PTC's reconstruction plan] will not cause environmental impacts any different from those which would result in each of the Valley Creek Watershed and the Trout Creek Watershed in the absence of the aforementioned conflict between the [PTC]'s ability to comply with the PTC Statutory Mandate and the [PTC]'s ability to meet the Township Standards;
>
> . . .
>
> NOW, THEREFORE, for and in consideration of the mutual promises set forth in this Agreement, and intending to be legally bound hereby, and in the public interest, which each of the [PTC] and the Township are desirous of advancing, the [PTC] and the Township agree as follows:
>
> 3. Acknowledgement of Preeminence of PTC Statutory Mandate and [PTC design plan]. Except as expressly set forth in this Agreement to the contrary, for all intents and purposes arising out of in any manner or form related to the Total Reconstruction Project, the PTC Statutory Mandate and the [PTC]'s design and construction of the Total Reconstruction Project substantially as depicted and described on the [PTC design plan] does, and shall be construed to, have preeminence

3

over the Township Standards as to all areas of conflict between the [PTC design plan] and the Township Standards . . .

6. <u>Environmental Protection</u>. [PTC] and the Township each acknowledges and confirms its respective obligations with regard to the impact of the Total Reconstruction Project upon the natural environment. In furtherance of that obligation, each of the [PTC] and the Township acknowledges the current and existing absence of facilities within the Project Area to adequately capture, treat and release stormwater from the Turnpike and the fact that the Total Reconstruction Project includes facilities to control the volume, rate and quality of such stormwater. In that regard, and notwithstanding the conflict between the [PTC design plan] and the Township Standards (including the Township's Flood Hazard Zoning District), each of *the [PTC] and the Township acknowledges that the nature and scope of environmental protection to be implemented pursuant to the Total Reconstruction Project will be equal or greater than the nature and scope of environmental protection which would be implemented in the absence of such conflict.*

7. <u>Flood Elevation</u>. [PTC] hereby represents and warrants to the Township that neither the Total Reconstruction Project nor any activities to be completed by [PTC] pursuant to the [PTC design plan], will cause any increase in the elevation of the 100 year flood within the Floodway (as that term is defined as of the date of this Agreement in the Township Zoning Ordinance), and hereby represents and warrants that there will be no adverse impacts on the Floodplain (as that term is defined as of the date of this Agreement in the Township Zoning Ordinance), downstream or upstream, that result from the Total Reconstruction Project

. . .

10. <u>Full and Final Resolution; Intention to Prevent Litigation; No Admission</u>. This Agreement is intended to be, and shall be construed as, a full and final resolution of any and all matters whatsoever arising directly or indirectly out of, related in any manner or form whatsoever to, or connected in any way with, the conflict between the [PTC's design plan] and the Township Standards (including the Township's Flood Hazard Zoning District) and/or the preeminence of the PTC Statutory Mandate and the [PTC]'s design and construction of the Total Reconstruction Project as depicted and described on the [PTC design plan] over the Township Standards (including the Township's

4

Flood Hazard Zoning District).  This Agreement is a compromise of disputed claims and nothing set forth in this Agreement is, or shall be construed as, an admission of liability or any act of wrongdoing by the [PTC] or the Township or either of them, each of them stating affirmatively its respective (and their collective) intent merely to avoid litigation.

(Id. at 2-5 (emphasis added).)

Petitioner objects to the Agreement and alleges that "[t]he PTC's reconstruction and new alteration of land, without stormwater controls required by Township ordinances will cause harm to the Valley Creek Watershed and the Trout Creek Watershed."  (Petition for Review ¶ 30.)  Petitioner contends that while Respondents assert that the Agreement will lead to stormwater and flood hazard controls greater than those currently in effect, an increase of controls over the baseline is not an excuse for violating Township's environmental ordinances.  (Id. ¶¶ 28-29.)  Petitioner further contends that "[t]he Agreement deprives [Petitioner] of the right to appeal a decision by the Township or its zoning or planning commission that would be appealable . . . through the judicial procedures available for decision by townships on land development."  (Id. ¶ 31.)

The Petition for Review alleges nine counts.  Count 1 alleges that Township, through entering into the Agreement, violated Section 11(a) of the Storm Water Management Act (SWMA)[1] and such constitutes a public nuisance under Section

---

[1] Act of October 4, 1978, P.L. 864, 32 P.S. § 680.11(a).  Section 11(a) provides:

After adoption and approval of a watershed storm water plan in accordance with this act, the location, design and construction within the watershed of storm water management systems, obstructions, flood control projects, subdivisions and major land developments, highways and transportation facilities, facilities for the provision of public utility services and facilities owned or financed in whole or in part by funds from the Commonwealth shall be conducted in a manner consistent with the watershed storm water plan.

**(Footnote continued on next page…)**

5

15(a) of SWMA.[2]  (Petition for Review ¶¶ 34-43.)  Count 2 alleges that by entering into the Agreement, PTC violated Section 13 of SWMA,[3] and that such violation is also a public nuisance under Section 15(a) of SWMA.  (Id. ¶¶ 45-52.)  Counts 3 and 4 allege that by entering into the Agreement, Township and PTC, respectively, violated their obligations under Article I, Section 27 of the Pennsylvania Constitution, Pa. Const. art. I, § 27, commonly referred to as the Environmental Rights Amendment (ERA).  (Id. ¶¶ 54-63.)  Counts 5 and 6 allege that, by entering into the Agreement, Township and PTC, respectively, abused their discretion and acted in an arbitrary and capricious manner by acting outside their respective authorities, and acted in bad faith.  (Id. ¶¶ 65-77.)  In support of these claims, Petitioner asserts that Section 507 of the Pennsylvania Municipalities Planning Code (MPC)[4] prohibits any land development in violation of local ordinance, and

_____

**(continued…)**

Id.

[2] 32 P.S. § 680.15(a).  This section provides that "[a]ny activity conducted in violation of the provisions of this act or of any watershed storm water plan, regulations or ordinances adopted hereunder, is hereby declared a public nuisance."  Id.

[3] 32 P.S. § 680.13.  Section 13 provides:

> Any landowner and any person engaged in the alteration or development of land which may affect storm water runoff characteristics shall implement such measures consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary to prevent injury to health, safety or other property.  Such measures shall include such actions as are required:
> > (1) to assure that the maximum rate of storm water runoff is no greater after development than prior to development activities; or
> > (2) to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury.

Id.

[4] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10507.  Section 507 provides:
**(Footnote continued on next page…)**

6

that Township has no authority to act outside the bounds of the MPC and PTC and is obliged to comply with local ordinances. (Id. ¶¶ 68-71, 76-77.) Count 7 alleges that by entering into the Agreement, Township bypassed the normal zoning and land development process and deprived Petitioner of its due process rights to notice and opportunity to be heard. (Id. ¶¶ 79-82.) Finally, Counts 8 and 9 allege that by agreeing to exempt PTC from Township's stormwater ordinances, Respondents have deprived Petitioner of equal protection of the law in violation of Article I, Section 26 of the Pennsylvania Constitution, Pa. Const. art. I, § 26. (Id. ¶¶ 84-87, 89-92.)

Respondents object to the Petition for Review through numerous POs. Township's first three POs allege issues of justiciability: the first alleges that Petitioner lacks standing (Township POs ¶¶ 4-10); the second alleges that the claims are not ripe (Id. ¶¶ 11-18); and the third alleges that declaratory relief should not be granted when the harm is speculative (Id. ¶¶ 19-25). Township's fourth PO is in the nature of a demurrer to all counts, and alleges that, as a matter of law, Petitioner "cannot establish how a Settlement Agreement can violate the Constitution and/or can be said to harm the environment or create a nuisance." (Id. ¶¶ 26-31.) Fifth, Township objects by alleging that this Court lacks jurisdiction

_____

(continued…)

> Where a subdivision and land development ordinance has been enacted by a municipality under the authority of this article no subdivision or land development of any lot, tract or parcel of land shall be made, no street, sanitary sewer, storm sewer, water main or other improvements in connection therewith shall be laid out, constructed, opened or dedicated for public use or travel, or for the common use of occupants of buildings abutting thereon, except in accordance with the provisions of such ordinance.

Id.

and that venue is not proper. (Id. ¶¶ 32-41.) In its sixth PO, Township objects to Count I of the Petition for Review on the basis that a violation of a stormwater ordinance does not raise a claim under SWMA. (Id. ¶¶ 42-46.) Township's seventh, eighth, ninth, and tenth POs demur to Petitioner's claims that Township violated the ERA, acted in an arbitrary and capricious manner, violated due process, and violated the Equal Protection Clause of the Pennsylvania Constitution, respectively, by alleging that Petitioner fails to state the material facts required to state a cause of action. (Id. ¶¶ 47-80.)

For its part, PTC's POs to many of the Counts asserted against it essentially mirror the Township's POs. The PTC's unique POs are as follows. PTC objects to all Counts on the basis of a lack of sufficiently specific allegations. (PTC POs ¶¶ 45-48.) PTC alleges that the Petition for Review puts forth conclusions without particular averments with regard to the harm Petitioner suffered or a connection between Respondents' conduct and harm to Valley Creek or Trout Creek. (Id.) PTC further objects to all Counts by alleging that the Petition for Review was not sent to PTC "in person or by certified mail" as required by Rule 1514(c) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1514(c). (Id. ¶¶ 49-53.) With regard to Petitioner's allegations regarding the SWMA in Count 2 of the Petition for Review, PTC alleges that Petitioner cannot allege harm to the waterways when the Agreement actually reduces runoff, and second that PTC is immune to any nuisance claim. (Id. ¶¶ 54-66.) With regard to the Petitioner's allegations in Count 4 of the Petition for Review concerning the ERA, PTC alleges that it and Township considered their obligations under the ERA and attempted to avoid any harm to the environment or public natural resources. (Id. ¶¶ 73-79.) In addition to asserting a demurrer to Petitioner's allegations of arbitrary and

8

capricious conduct, abuse of discretion, and bad faith in Count 6 that mirrors Township's demurrer, (id. ¶¶ 86-88), PTC also objects to Count 6 pursuant to Rule 1028(a)(2) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1028(a)(2), by alleging that the Petition for Review includes scandalous or impertinent matter, (Id. ¶¶ 89-95).

The case was originally assigned to a single judge in July, 2016. After argument via telephone on July 6, 2016, this Court disposed of some of the POs in an opinion dated July 15, 2016. Therein, this Court noted that Petitioner conceded its Counts 8 and 9 (equal protection) at the July 6, 2014 argument, and sustained Respondents' POs to those Counts. This Court also overruled PTC's PO alleging that the Petition for Review should be dismissed because it was not sent to PTC "in person or by certified mail" as required by Rule 1514(c) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1514(c). (PTC's POs ¶¶ 49-53.) Petitioner attached an exhibit to its Answer to PTC's POs showing that the pleading was indeed sent by certified mail, return receipt requested, and was signed for on February 29, 2016. (Answer to PTC's POs, Ex. 1.) Further, this Court overruled Respondent's POs alleging that this Court lacks jurisdiction and that venue is improper. (PTC POs ¶¶ 19-33; Township's POs ¶¶ 32-41.) The remaining POs were assigned to this panel for argument and disposition.

## II.    DISCUSSION

Our review of preliminary objections in our original jurisdiction is limited to the pleadings. Pa. State Lodge, Fraternal Order of Police v. Dep't of Conservation & Nat. Res., 909 A.2d 413, 415 (Pa. Cmwlth. 2006). We must accept as true all well-pleaded averments set forth in the Petition for Review, and all inferences

9

reasonably deduced therefrom. Id. at 415-16. We will sustain preliminary objections only if it is clear that the law will not permit the requested relief and any "doubt must be resolved in favor of overruling the preliminary objections." Id. at 416. In testing Petitioner's numerous claims against Respondents' numerous POs, we find it helpful to separate the Petition for Review into those Counts that allege that the Agreement is invalid due to its effect on the environment, and those Counts that allege that the Agreement is invalid due to infirmities in the process by which it was executed.

## A. Injury to the Environment

In Counts 1 and 2 of the Petition for Review, Petitioner alleges that "[t]he Agreement allows the PTC to violate the requirements of some of the Township's stormwater ordinances, in violation of . . . SWMA." (Petition for Review ¶¶ 38, 48.) Counts 3 and 4 allege that Respondents have violated the ERA "by agreeing to waive the requirements of [the Township's] stormwater ordinances whose purpose is to protect the environmental resources of the [T]ownship." (Id. ¶¶ 57, 62.) Petitioner does not allege that Respondents have violated the stormwater ordinances or harmed the environment as of yet. Petitioner only alleges that, should the Agreement stand and the parties receive all other permits, the construction approved by the Township and carried out by the PTC will be inconsistent with the provisions of the Township's stormwater management ordinances and harm the environment.

## 1. Standing and Ripeness

10

Respondents allege that Petitioner lacks standing to assert the claims and that the claims are not ripe for judicial resolution because the execution of the Agreement does not, by itself, result in any harm to the environment or increase stormwater runoff. In response, Petitioner argues that because the Agreement is a contract that went into effect upon signing, judicial action is appropriate. According to Petitioner, the Agreement is the final action by the Township and the PTC is free to begin construction at any time once it obtains approval from DEP in the form of a National Pollutant Discharge Elimination System (NPDES) permit.

"A declaratory judgment must not be employed to determine rights in anticipation of events which may never occur or for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic." Gulnac by Gulnac v. S. Butler Cnty. Sch. Dist., 587 A.2d 699, 701 (Pa. 1991). In other words, declaratory relief will only be granted if the litigation involves a controversy that is both imminent and inevitable and where the declaration sought will help end the controversy between the parties. Pa. Indep. Oil & Gas Ass'n v. Dep't of Envtl. Prot., 135 A.3d 1118, 1128 (Pa. Cmwlth. 2015). To that end, we apply, *inter alia*, the justiciability doctrines of standing and ripeness. Id.

A person is sufficiently aggrieved under Pennsylvania's prudential standing requirement "if he can establish that he has a substantial, direct[,] and immediate interest in the outcome of the litigation." Fumo v. City of Phila., 972 A.2d 487, 496 (Pa. 2009). "A party has a substantial interest in the outcome of litigation if his interest surpasses that of all citizens in procuring obedience to the law." Id. (quotation omitted). While the harm alleged must be substantial, it need not be pecuniary in nature. See Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 346

11

A.2d 269, 281 n.20 (Pa. 1975) (quoting Sierra Club v. Morton, 405 U.S. 727, 734 (1972) ("Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process.")). An interest is direct if there is a causal connection between the matter complained of and the harm alleged. Fumo, 972 A.2d at 496 (quotation omitted). An interest is immediate when the "causal connection is not remote or speculative." Id. Associations have standing to assert any rights they may have as well as the rights of any member even in the absence of injury to itself. Nat'l Solid Wastes Mgmt. Ass'n v. Casey, 580 A.2d 893, 899 (Pa. Cmwlth. 1990).

The justiciability doctrine of ripeness is similar to standing, "especially where the contentions regarding lack of justiciability are focused on arguments that the interest asserted by the petitioner is speculative, not concrete, or would require the court to offer an advisory opinion." Robinson Twp., Washington Cnty. v. Commonwealth, 83 A.3d 901, 917 (Pa. 2013). Ripeness is distinct from standing insofar as "ripeness also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute." Id. "In deciding whether the doctrine of ripeness bars consideration of a declaratory judgment action, we consider 'whether the issues are adequately developed for judicial review and what hardship the parties will suffer if review is delayed.'" Pa. Indep. Oil & Gas Ass'n, 135 A.3d at 1127-28 (quoting Rouse & Assoc.-Ship Rd. Land Ltd. P'ship v. Pa. Envtl. Quality Bd., 642 A.2d 642, 645 (Pa. 1994)) (emphasis omitted).

12

We agree with Respondents that Petitioner's claims under the SWMA are not adequately developed, and therefore, not ripe for review. The SWMA was designed to "[e]ncourage planning and management of storm water runoff in each watershed which is consistent with sound water and land use practices." Section 3(1) of the SWMA, 32 P.S. § 680.3(1). The focus of the SWMA is the development and adoption of watershed management plans by counties. In order to encourage effective stormwater management, the SWMA imposes duties on both municipalities and land developers. Section 11(a) of the SWMA addresses the duties of municipalities and provides:

> After adoption and approval of a watershed storm water plan in accordance with this act, the location, design and construction within the watershed of storm water management systems, obstructions, flood control projects, subdivisions and major land developments, highways and transportation facilities, facilities for the provision of public utility services and facilities owned or financed in whole or in part by funds from the Commonwealth *shall be conducted* in a manner consistent with the watershed storm water plan.

32 P.S. § 680.11(a) (emphasis added). By enacting Section 11(a) the General Assembly linked municipal land development decisions made pursuant to the MPC with stormwater management plans enacted pursuant to the SWMA. Section 13 of the SWMA places certain obligations on landowners and persons engaged in the alteration or development of land. Section 13 provides:

> Any landowner and any person engaged in the alteration or development of land which may affect storm water runoff characteristics *shall implement* such measures consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary to prevent injury to health, safety or other property. Such measures shall include such actions as are required:

13

(1) to assure that the maximum rate of storm water runoff is no greater after development than prior to development activities; or
(2) to manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury.

32 P.S. § 680.13 (emphasis added). In order to enforce these provisions, the General Assembly declared that "[a]ny activity conducted in violation of the provisions of [the SWMA] or of any watershed storm water plan, regulations or ordinances adopted [t]hereunder, is . . . a public nuisance." Section 15(a) of the SWMA, 32 P.S. § 680.15(a). The General Assembly further established a cause of action in Section 15(b) of SWMA, whereby it authorizes aggrieved persons to bring a civil action to "restrain, prevent or abate violation of [SWMA] or of any watershed storm water plan, regulations or ordinances adopted [t]hereunder." 32 P.S. § 680.15(b).

An action asserting a violation of Section 11(a) of SWMA must allege that the location, design, and construction of, *inter alia*, major development projects was, or will be, *conducted* in a manner that is inconsistent with an approved watershed stormwater plan, regulations, or ordinances adopted thereunder. 32 P.S. § 680.11(a). An action asserting a violation of Section 13 must allege that a person engaged in the alteration or development of land did not, or will not, *implement* "measures consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary to prevent injury to health, safety or other property." 32 P.S. § 680.13. For both causes of action, the petitioner must allege, and ultimately show, that activities contrary to the applicable plan or ordinances have been, or will be, conducted (Section 11(a)) or implemented (Section 13).

14

In the case at bar, nothing has been conducted or implemented as of yet and Petitioner acknowledges that the "PTC must go through a process involving several agencies before it may begin construction." (Petitioner's Br. at 6 n.2.) In fact, since the Petition for Review was filed, Petitioner has appealed to the Environmental Hearing Board (EHB) a recent decision by DEP to grant the PTC a NPDES permit.[5] Thus, this Court does not know what the final design of the reconstruction project will be with regard to stormwater runoff. Until the issues are further developed, this Court cannot effectively consider whether the SWMA or any ordinance adopted thereunder has been, or will be, violated. Accordingly we shall grant Respondents' POs alleging that Counts 1 and 2 of the Petition for Review are not ripe.

We also conclude that Petitioner's claims under the ERA also are not ripe. The ERA provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, § 27. This Court determines whether a cause of action under the ERA has been alleged, in part, by applying the threefold test established in Payne

---

[5] On November 4, 2016, Respondents jointly filed an Application for Leave to File Post-Argument Communication in the Form of a Letter pursuant to Rule 2501(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 2501(a), and attached a letter from Counsel and Petitioner's Notice of Appeal to the EHB. We grant the Application and will direct the Chief Clerk to docket the Letter and Notice of Appeal to the EHB.

15

v. Kassab, 312 A.2d 86, 94 (Pa. Cmwlth. 1973). The Payne test requires this Court to assess the following questions:

> (1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?

Id.

In order to apply the Payne test here, Petitioner must allege facts on the environmental harm that will result from the construction. While Petitioner has generally alleged that the construction will have deleterious effects on the Valley Creek and Trout Creek watersheds, we cannot know if the harm will outweigh the benefits of the challenged decisions until the final design of the reconstruction project is known. Because we cannot determine the harm prior to knowing the environmental measures DEP or the EHB will ultimately require, Petitioner's ERA claims are not adequately developed for our review, and we sustain Respondents' POs alleging that Counts 3 and 4 of the Petition for Review are not ripe.[6]

As Counts 1-4 may become ripe at some point in the future, we will dismiss these Counts *without* prejudice.

---

[6] Even if Counts 3 and 4 of the Petition for Review asserting claims under the ERA were ripe, we would have granted Respondents' demurrer to Petitioner's ERA claims in Counts 3 and 4 of the Petition for Review. Petitioner does not adequately allege that Respondents did not put forward a "reasonable effort to reduce the environmental incursion to a minimum." Payne, 312 A.2d at 94. Nor does Petitioner allege that the environmental harm outweighs the benefit of the challenged action. Id.

16

## B. Infirmities in the Process

Counts 5 and 6 of the Petition for Review allege that by entering into the Agreement, Respondents abused their discretion, acted in an arbitrary and capricious manner, and in bad faith. Count 7 of the Petition for Review is based on facts similar to those alleged in Counts 5 and 6, and alleges that the Township deprived Petitioner of its due process rights.

### 1. Standing and Ripeness

Contrary to those Counts alleging harm to the environment, discussed *supra*, Petitioner's claims asserted in Counts 5-7 of the Petition for Review are ripe and Petitioner has standing to bring such claims. With regard to standing, Petitioner has adequately alleged a substantial, direct, and immediate interest in the outcome of the litigation. Fumo, 972 A.2d at 496. By alleging that Petitioner's objective since 1976 is to preserve Valley Creek and Trout Creek, Petitioner alleges a substantial interest in the outcome of the challenged action that surpasses that of all citizens. By alleging that the Agreement will diminish Petitioner's ability to protect Valley Creek and Trout Creek from harm, Petitioner alleges a direct interest. And because Counts 5-7 of the Petition for Review do not allege environmental harm, but instead challenge the authority of PTC and Township to enter into the Agreement and the resultant deprivation of rights, Petitioner has asserted an interest that is immediate. The Agreement is the final action of Township and Petitioner no longer has the ability to intervene in the Township's decision-making process. Because no issues are left to develop, we conclude that the claims asserted in Counts 5-7 of the Petition for Review are ripe for judicial

17

resolution. Accordingly, we overrule Respondents' POs alleging that Counts 5-7 of the Petition for Review are not justiciable due to lack of standing and ripeness.

### 2. **Demurrers to Counts 5-6 (Arbitrary and Capricious Action)**

In Counts 5 and 6 of the Petition for Review, Petitioner asserts that all land development in the Township, including reconstruction of the Turnpike, must be approved through the administrative process detailed in the MPC and that the Agreement illegally bypasses these established processes. (Petition for Review ¶¶ 68-72.) Petitioner also alleges that the Township has no authority under the MPC or its Home Rule Charter to exempt a specific party from complying with its stormwater ordinances and the PTC has no authority to not comply with the ordinances. (Id. ¶¶ 65, 71, 76.) Petitioner alleges that by bypassing the established process, Respondents have "acted in an arbitrary and capricious manner, abused its discretion[,] and acted not in accordance with law," and that such "constitutes bad faith." (Id. ¶¶ 73, 77.) Respondents demur to these allegations by alleging that the claims are both factually and legally insufficient. Respondents point to the elements of arbitrary conduct, abuse of discretion, and bad faith and argue that Petitioner has not alleged that the Agreement is the result of such conduct.

Respondents are correct that the titles of Counts 5 and 6 are unclear and Petitioner's use of the terms "abuse of discretion," "arbitrary and capricious," and "bad faith" do not effectively describe the claims asserted.[7] Looking through the

---

[7] Although these terms do not effectively describe the cause of action, we do not find them to be scandalous or impertinent. "To be scandalous and impertinent, the allegations must be immaterial and inappropriate to the proof of the cause of action." Common Cause/Pa. v. Com., 710 A.2d 108, 115 (Pa. Cmwlth. 1998), aff'd, 757 A.2d 367 (Pa. 2000). Further, we note that "the right of a court to strike impertinent matter should be sparingly exercised and only when a party can affirmatively show prejudice." Dep't of Envtl. Res. v. Hartford Acc. & Indem. **(Footnote continued on next page…)**

18

titles of Counts 5 and 6 to the substantive allegations, it is clear that Petitioner is alleging that Respondents lack the authority to enter into the Agreement; i.e., that Respondents acted ultra vires. "An organization performs an ultra vires act if it performs the act without any authority to do so on a particular subject or if it has authority to do so but exercises it irregularly." Chichester Sch. Dist. v. Chichester Educ. Ass'n, 750 A.2d 400, 403 (Pa. Cmwlth. 2000) (internal quotation marks omitted).

Although it is true that, in Pennsylvania, "[t]here is a strong judicial policy in favor of parties voluntarily settling lawsuits," Rothman v. Fillette, 469 A.2d 543, 546 (Pa. 1983), the government parties entering the agreement must be endowed with the authority to enter into the agreement. Township is a "creature of the state and possesses only such powers of government as are expressly granted to it and as are necessary to carry the same into effect," Appeal of Gagliardi, 163 A.2d 418, 419 (Pa. 1960). Similarly, PTC is an independent agency of the Commonwealth and, like all creations by the General Assembly, is limited and guided by statutory standards. Grimaud v. Pa. Ins. Dep't, 995 A.2d 391, 405 (Pa. Cmwlth. 2010). As such, we must look to statutory authority to determine whether Respondents acted ultra vires.

The MPC prohibits any land development or improvement on roads without compliance with the appropriate subdivision and land development ordinance (SALDO). Section 507 of the MPC provides:

---

(continued…)

Co., 396 A.2d 885, 888 (Pa. Cmwlth. 1979). The terms "arbitrary," "abuse of discretion," and "bad faith" are legal terms with a specific meaning. Petitioner's use of these terms was an attempt to provide a legal description to the substance of the allegation. As such, we overrule the PTC PO pursuant to Rule 1028(a)(2), Pa. R.C.P. No. 1028(a)(2).

19

Where a [SALDO] has been enacted by a municipality under the authority of this article no subdivision or land development of any lot, tract or parcel of land shall be made, no street, sanitary sewer, storm sewer, water main or other improvements in connection therewith shall be laid out, constructed, opened or dedicated for public use or travel, or for the common use of occupants of buildings abutting thereon, except in accordance with the provisions of such ordinance.

53 P.S. § 10507. Pursuant to the Township's SALDO, any land development plan must first be reviewed and approved by the Planning Commission through a process that includes the submission of preliminary and final plans, and the holding of public meetings. Sections 181-20 – 181-26 of the Township's SALDO.[8] The MPC provides the Township with the authority to modify requirements of the SALDO if, due to the peculiar constraints of the land, the requirements would cause unnecessary hardship, and such modification is also authorized in the SALDO itself. Section 512.1(a) of the MPC,[9] 53 P.S. § 10512.1(a); see Ruf v. Buckingham Twp., 765 A.2d 1166 (Pa. Cmwlth. 2001) (holding that the township should have granted a modification of the SALDO to a petitioner because the unique topography of a property rendered literal enforcement of stormwater control requirements upon a new development unreasonable and would cause

_____

[8] Petitioners did not attach the Township's SALDO to the Petition for Review. We take judicial notice of the SALDO as found on the Township's website. 42 Pa. C.S. § 6107(a).

[9] Added by Section 40 of the Act of December 21, 1988, P.L. 1329. Section 502.1(a) provides:

(a) The governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

53 P.S. § 10512.1(a).

undue hardship).   However, any modification must occur through a specific process articulated in the MPC and SALDO.  53 P.S. §§ 10512.1(b)-(d).[10]  The Township's SALDO provides this authority to the Board of Supervisors.  (Section 181-65 of the Township's SALDO.)  The decision of the Board of Supervisors to modify the requirements of the SALDO may be appealed to the appropriate court of common pleas as a land use appeal in accordance with Section 1002–A of the MPC,[11] 53 P.S. § 11002-A.  Residents Against Matrix v. Lower Makefield Twp., 802 A.2d 712, 714 (Pa. Cmwlth. 2002).

Accepting all material allegations as true, we conclude that Petitioner sufficiently alleges that by entering the Agreement, Respondents acted ultra vires and deprived Petitioner of its right under Section 507 of the MPC to challenge the modification of stormwater ordinances through the process outlined by the MPC and the Township's SALDO.  Because it is not free from doubt that Respondents were empowered to enter the Agreement, we overrule Respondents' demurrers to Counts 5 and 6 of the Petition for Review.

---

[10] The process is detailed in subsections (b)-(d) of Section 512.1 of the MPC as follows:

(b) All requests for a modification shall be in writing and shall accompany and be a part of the application for development.  The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of the ordinance involved and the minimum modification necessary.
(c) If approval power is reserved by the governing body, the request for modification may be referred to the planning agency for advisory comments.
(d) The governing body or the planning agency, as the case may be, shall keep a written record of all action on all requests for modifications.

53 P.S. § 10512.1(b)-(d).
[11] Added by Section 101 of the Act of December 21, 1988, as amended.

21

### 3. Demurrer to Count 7 (Due Process)

Similar to the allegations in Counts 5 and 6, Petitioner alleges in Count 7 that by entering into the Agreement, the Township violated its rights to due process. (Petition for Review ¶ 82.) Petitioner alleges that but for the Agreement it would have the right to appeal variances or deviation from the Township's stormwater management ordinances through a legal process. The Agreement, according to Petitioner, removes those procedural rights and denies it notice and the opportunity to be heard. The Township demurs to Count 7 by alleging that Petitioner has not identified with any specificity how the Township deprived Petitioner of its due process rights.

Due process protects the right to life, liberty, or property. Pa. Game Comm'n v. Marich, 666 A.2d 253, 256 (Pa. 1995). "[C]ourts examine procedural due process questions in two steps: the first asks whether there is a life, liberty, or property interest that the state has interfered with; and the second examines whether the procedures attendant to that deprivation were constitutionally sufficient." Com. v. Turner, 80 A.3d 754, 764 (Pa. 2013). Here, Petitioner alleges that it has been denied the right to object to any deviation from the ordinances to an administrative body. Petitioner has not alleged with any specificity any right to due process that has been abridged by Respondents. The right to object to government decisions, absent a property interest in the decision, is not protected by due process. We, therefore, sustain the Township's demurrer to Count 7.

### III. CONCLUSION

In conclusion, we sustain Respondents' POs alleging that Counts 1, 2, 3, and 4 of the Petition for Review are not ripe, and that Count 7 of the Petition for

Review is legally insufficient.  We dismiss Counts 1, 2, 3, 4, and 7 of the Petition for Review, and dismiss as moot all other POs to such Counts.  We overrule all POs to Counts 5 and 6 of the Petition for Review.


_____
**RENÉE COHN JUBELIRER,** Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Valley Forge Chapter of Trout :
Unlimited, :
     Petitioner :
       :
   v.     :  No. 161 M.D. 2016
       :
Township of Tredyffrin and :
Pennsylvania Turnpike Commission, :
     Respondents :

# O R D E R

NOW, December 20, 2016, the Preliminary Objections of the Township of Tredyffrin (Township) and the Pennsylvania Turnpike Commission (PTC) (together, Respondents) to Valley Forge Chapter of Trout Unlimited's (Petitioner) Petition for Review in the above-captioned matter are **OVERRULED**, in part, and **SUSTAINED**, in part, as follows:

(1) Respondents' Preliminary Objection alleging that the matters asserted in the Petition for Review are not ripe is **SUSTAINED** as to Counts 1, 2, 3, and 4 of the Petition for Review and **OVERRULED** as to Counts 5, 6, and 7;

(2) Counts 1, 2, 3, and 4 of the Petition for Review are **DISMISSED without prejudice**;

(3) Respondents' remaining Preliminary Objections to Counts 1, 2, 3, and 4 of the Petition for Review are **DISMISSED** as moot;

(4) Respondents' Preliminary Objections alleging that Petitioner lacks standing to assert the claims in Counts 5, 6, and 7 of the Petition for Review are **OVERRULED**;

(5) Respondents' demurrers to Counts 5 and 6 of the Petition for Review are **OVERRULED**;

(6) PTC's Preliminary Objection pursuant to Rule 1028(a)(2) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1028(a)(2), to Count 6 of the Petition for Review, alleging that the Petition for Review includes scandalous or impertinent matter, is **OVERRULED**.

(7) Township's demurrer to Count 7 of the Petition for Review is **SUSTAINED**;

(8) Count 7 of the Petition for Review is **DISMISSED** with prejudice.


Respondents' Application for Leave to File Post-Argument Communication in the Form of a Letter is **GRANTED**. The Chief Clerk is directed to docket the Letter in Nature of Post-Argument Communication.


_____
**RENÉE COHN JUBELIRER,** Judge